**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| STEVE CHING INSURANCE, INC. and KIM DAO AGENCY, LLC, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY and GEICO INSURANCE AGENCY, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Steve Ching Insurance, Inc. and Kim Dao Agency, LLC (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class," as more fully defined below), bring this Class Action Complaint against Defendants Government Employees Insurance Company and GEICO Insurance Agency, Inc. (collectively, "Defendants"), arising out of Defendants' uniform pattern and practice of wrongfully denying Plaintiffs and the other Class members commissions to which they are legally entitled and wrongfully appropriating Plaintiffs' and the other Class members' clients and revenues. Plaintiffs make the following allegations upon personal knowledge as to their own acts, and upon information and belief and their attorneys' investigation as to all other matters, alleging as follows:

### I.    <u>NATURE OF THE ACTION</u>

1.      Plaintiffs bring their claims individually, and on behalf of a Class of similarly situated present and former local insurance agencies, seeking damages and other relief resulting from Defendants' breaches of contract and other unfair, deceptive, and illegal practices, which

deprived Plaintiffs and the other Class members of monetary and other benefits to which they are legally entitled.

2.    Specifically, the Class consists of both current and former local insurance agencies that signed GEICO Field Representative Agreements with Defendants and were damaged as a result of Defendants' breaches of contract and other wrongdoing (the "Agency Class"), including, but not limited to, the wrongful denial of commissions for generating new business, and a subclass of former local insurance agencies that suffered the same damages as the Agency Class, but also suffered additional damages, including, but not limited to, the denial of post-termination renewal commissions[1] and the wrongful appropriation of clients and potential clients, due to their contracts being arbitrarily terminated by Defendants (the "Former Agency Class"). The Agency Class and Former Agency Class are collectively referred to herein as the "Class."

3.    Plaintiffs are members of both the Agency Class and Former Agency Class because they were denied commissions and other monetary benefits due to Defendants' unlawful practices during the course of their relationships with Defendants. Plaintiffs are also members of both the Agency Class and Former Agency Class, as they had their contracts wrongfully terminated by Defendants, after which time Defendants refused to pay post-termination renewal commissions and seized Plaintiffs' and the other Former Agency Class members' clients and potential clients.

4.    Defendants contracted with Plaintiffs Steve Ching Insurance, Inc., Kim Dao Agency, LLC, and the other Class members to set up and run local GEICO offices under its Field Representative or local agent program.  As part of that program, Defendants required Plaintiffs and the other Class members to sign unilateral contracts of adhesion, known as the GEICO Field

---

[1] "Post-termination renewal commissions," as used throughout this Complaint, refers to all commissions (brokered or otherwise), service fees, referral fees, and the like, which Plaintiffs claim GEICO was supposed to pay to Plaintiffs and the other Class members under the Agreements.

Representative Agreement (the "Agreement"), through their principals (in the case of Plaintiffs, Steven Ching and Kim Dao), purporting to make them independent contractors or non-employee captive agents.  In reality, however, Defendants exerted a level of control over the principals and other employees who worked for Plaintiffs and the other Class members, thus rendering them employees in fact.

5.     Defendants' false and intentional misclassification of these individuals as non-employees also allowed Defendants to take advantage of them for Defendants' financial benefit in other ways, including: (a) denying them employment benefits provided to employees such as health insurance coverage on the same terms; (b) the protections of federal and state laws; and (c) overtime wages.[2]  Through their unlawful and unethical practices, Defendants imposed a one-sided relationship on Plaintiffs and the other Class members, where Defendants took everything, and left Plaintiffs and the other Class members holding the bag.

6.     Defendants required Plaintiffs and the other Class members to invest their own money to set up GEICO local offices at locations of Defendants' choosing, hire employees specified by Defendants, build out and furnish the offices, pursuant to GEICO's final approval, provide business plans that incorporated figures provided and mandated by Defendants, and service Defendants' customers using pre-approved scripts and materials provided and required by Defendants.

7.     Plaintiffs and the other Class members were intentionally misled when Defendants told them that their principals would be business owners and, accordingly, were required to invest significantly into their local agencies.  As purported business owners, and based on the program's

---

[2] Some of these practices are the subject an ERISA class action lawsuit presently pending against Defendants. *See Moyer v. Governmental Employees Insurance Co, et al.*, No. 2:23-CV00578 (S.D. Ohio).

history, they believed that they would have ownership, control, and significant rights over their agencies, consistent with their significant investments; not that Defendants could simply take everything away on a whim, treating them like at-will employees. Indeed, no reasonable person would invest significant amounts of their own funds into setting up a GEICO office if Defendants could unilaterally and arbitrarily end the relationship and take away all the fruits of their labor and investment, including clients, potential clients, and good will, without paying any compensation.

8.     Under their contracts, Plaintiffs and the other Class members were compensated by Defendants on a commission or "piece rate" basis, earning a certain amount, as specified in their contracts, for each GEICO insurance policy that they sold. They were also to receive payments under their contracts each time a customer renewed their GEICO insurance policy. Finally, they were to receive payments for selling other branded insurance products under separate appointment, which Defendants had to approve.

9.     Defendants engaged in a number of unscrupulous practices during their relationships with Plaintiffs and the Agency Class members designed to deny them commissions that they were entitled to under their contracts, and which unjustly enriched Defendants at Plaintiffs' and the Agency Class members' expense. These practices include various ways that Defendants prevented—and continue to prevent—Plaintiffs and the Agency Class members from earning commissions by diverting their potential clients to deal directly with Defendants or with Defendants and another insurance company, The General, whose products GEICO sold, but Plaintiffs and the other Agency Class members were not appointed to sell. This enabled Defendants to receive 100% of the revenue generated by and derived from Plaintiffs' and the other Agency Class members' work, depriving Plaintiffs and the other Agency Class members of those revenues.

10.     During the relevant time period, Defendants also arbitrarily terminated the contracts of Plaintiffs and each of the other Former Agency Class members in bad faith and in breach of Defendants' contracts with each of them.[3]  Defendants then retained for themselves, at the expense of Plaintiffs and the other Former Agency Class members, the value of Plaintiffs' and the Former Agency Class members' businesses, investments, and livelihoods.  Plaintiffs and the other Former Agency Class members suffered extreme financial damages and hardship when Defendants arbitrarily ended their relationships and illegally kept everything Plaintiffs and the other Former Agency Class members had built.

11.     Defendants further breached their contracts with Plaintiffs and the other Former Agency Class members—and/or unjustly enriched themselves at Plaintiffs' and the other Former Agency Class members' expense—by refusing to pay post-termination renewal commissions for renewals of Plaintiffs' and the other Former Agency Class members' customers' GEICO insurance policies that were rightfully due to Plaintiffs and other Former Agency Class Members.

12.     All of the above-described conduct was part of Defendants' ultimate scheme to seize the businesses developed over years, and sometimes decades, of hard work by Plaintiffs and the other Class members, and to steal Plaintiffs' and the other Class members' commissions, clients, and potential clients to which Plaintiffs and the other Class members are entitled.

13.     In sum, Defendants wrote contracts of adhesion and engaged in practices which ensured that they would reap the full financial benefit of the contributions of Plaintiffs and the other Class members, while, at the same time, ensuring financial injury to them.  Defendants unjustly enriched themselves at Plaintiffs' and the other Class members' expense.

---

[3] To the extent the Agreements purport to allow Defendants to terminate the Agreements without cause, retaining the entire value of Plaintiffs' and the other Class members' businesses and investments for themselves, those provisions are unconscionable and thus unenforceable.

14.     Plaintiffs, individually and on behalf of all other members of the Agency Class and Former Agency Class bring claims of breach of contract and unjust enrichment based on Defendants' above-described illegal scheme.

## II.     JURISDICTION AND VENUE

15.     This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2)(A). Defendants are citizens of a state different from that of Plaintiffs, the putative class size is greater than 100, and the aggregate amount in controversy for the proposed Class exceeds the sum or value of $5,000,000, exclusive of interest and costs.

16.     This Court has personal jurisdiction over Defendants because Defendants' principal place of business is located in this District and Defendants make decisions regarding overall corporate governance and management, including with respect to their Field Representative and local agent program, in this District.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events and omissions giving rise to this action occurred in this District and because Defendants are headquartered in this District.

## III.     PARTIES

A.     *Plaintiffs*

18.     Steve Ching Insurance, Inc. is an Oregon corporation. At all times relevant hereto, Steven Ching was the principal officer of Steve Ching Insurance, Inc. During the relevant time period, Steve Ching Insurance, Inc. was located and conducted business at 1606 Northeast 6th Avenue, Portland, Oregon. In or around August 2018, and on or about December 21, 2020, Steve Ching Insurance, Inc., through its officer Steven Ching, entered into GEICO Field Representative

Agreements ("Agreement") with Defendants. On or about March 21, 2023, Defendants wrongfully terminated their Agreement with Steven Ching Insurance, Inc.

19.     Kim Dao Agency, LLC is a Georgia corporation. At all times relevant hereto, Kim Dao was the principal officer of Kim Dao Agency, LLC. During the relevant time period, Kim Dao Agency, LLC was located and conducted business at 2512 Blackmon Drive, Suite 920, Decatur, Georgia. On or about February 1, 2018, and November 21, 2020, Kim Dao Agency, LLC, through its officer Kim Dao, entered into GEICO Field Representative Agreements ("Agreement") with Defendants. On or about March 21, 2023, Defendants wrongfully terminated their Agreement with Kim Dao Agency, LLC.

**B.      *Defendants***

20.     Government Employees Insurance Company is a Maryland Corporation with its principal place of business in Chevy Chase, Maryland.

21.     GEICO Insurance Agency, Inc. is a Maryland corporation with its principal place of business in Chevy Chase, Maryland.

22.     Government Employees Insurance Company and GEICO Insurance Agency, Inc., are collectively referred to as "Defendants," herein.

23.     In 1996, Defendants became wholly owned by Berkshire Hathaway.[4]

24.     Defendants state on their website that GEICO is the third-largest private passenger auto insurer in the United States.  They employ more than 38,000 associates (this does not include GEICO Field Representatives ("GFRs"), who Defendants misclassify as non-employees).[5]

---

[4] About GEICO, Corporate Information, Links, and Resources, available at
https://www.geico.com/about/corporate/at-a-glance/ (viewed Oct. 2, 2023).

[5] *Id.*

25.     A core facet of Defendants' business is selling auto insurance.  GEICO's website emphasizes that it  has more than 16 million auto policies in force and insures more than 28 million vehicles.  In addition to auto insurance, Defendants offer a number of other types of insurance, including motorcycle, ATV, RV, and boat insurance, homeowners, renters, condo, co-op, mobile home insurance, personal umbrella protection, life insurance, flood insurance, overseas insurance, business owners' policy, professional liability insurance, general liability insurance, commercial auto insurance, collector car insurance, identity protection, and jewelry insurance.[6]

26.     According to GEICO's website, Defendants have assets exceeding $32 billion.[7]

27.     Defendants have a number of affiliates that operate for various purposes under the GEICO trademark.[8]

## IV.     FACTUAL ALLEGATIONS

### A.     *Plaintiffs' and the Other Class Members' Agreements with Defendants*

28.     Plaintiffs and each of the other Class members signed one or more Agreements with Defendants.

29.     While Defendants revised the Agreement over time—with different versions effective in 2008 ("2008 Agreement"), February 2012 ("2012 Agreement"), and November 2020 ("2020 Agreement"), the terms of those agreements were substantially similar to one another. There were, however, key differences between the various Agreement versions.  For example, the 2020 Agreement omitted critical language that was found in the 2012 Agreement, including, but

---

[6] *Id.*

[7] About GEICO, Corporate Information, Links, and Resources, available at https://www.geico.com/about/corporate/financial-strength/ (viewed October 2, 2023).

[8] About GEICO, Corporate Information, Links, and Resources, available at https://www.geico.com/about/corporate/corporate-ownership/ (viewed October 2, 2023).

not limited to, provisions regarding renewal commissions available to Plaintiffs and the other Class members.

30.     All 2012 Agreements entered into by Plaintiffs and the other Class members were materially identical.

31.     All 2020 Agreements entered into by Plaintiffs and the other Class members were materially identical.

32.     Kim Dao Agency, LLC's 2012 Agreement was signed on February 1, 2018, and is attached hereto as Exhibit 1.

33.     Kim Dao Agency, LLC's 2020 Agreement was signed on November 21, 2020, and is attached hereto as Exhibit 2.

34.      Steve Ching Insurance, Inc.'s 2020 Agreement was signed on December 21, 2020, and is attached hereto as Exhibit 3.

i.     Compensation under the Agreements

35.     The Agreements set forth the manner by which Defendants were obligated to compensate Plaintiffs and the other Class members. They were to receive commissions consisting of a certain percentage of a customers' premium, for each customer that they caused to purchase a GEICO insurance policy. These commissions were the only way that Plaintiffs and the other Class members were paid. They were not paid hourly for their work, nor were they paid for servicing customers who purchased policies directly through Defendants, or through other local agents.

36.     Both the 2012 and 2020 Agreements provide that Plaintiffs and the other Class members would be compensated through commission payments, pursuant to the commission schedules in the Agreements.

37.     The 2020 Agreement states, "[a]s sole and complete compensation for its services hereunder as respects GEICO policies, GEICO will pay to GFR commissions on business produced by GFR as set forth in the applicable schedule of commissions attached hereto and incorporated into this Agreement."

38.     As set forth more fully below, Defendants engaged in uniform practices that were designed to permit Defendants to reap the full benefits of Plaintiffs' and the other Class members' efforts and resources, while preventing them from earning commissions to which they were entitled. As a result, Defendants were able to generate more profits by paying less for Plaintiffs' and the other Class members' services.

39.     For example, Defendants refused to write policies to potential customers that Plaintiffs and the other Class members did all the work to market to, recruit, and engage as potential customers (*i.e.*, "produce[ ]" the "business").[9] *See supra* ¶ 37.  Defendants would then cut out Plaintiffs and the other Class members, intentionally circumventing them to directly sell policies to their customers, to Defendants' benefit and to Plaintiffs' and the other Class members' detriment.  While there was a process by which Plaintiffs and the other Class members could make written requests to claim commissions from Declined Policy 1 ("DP1") customers, Defendants never actually disclosed that process, nor did GEICO provide Plaintiffs and the other Class members with information regarding DP1 customers as to whom they could claim commissions. As such, Plaintiffs and the other Class members were not paid for their work, which unjustly enriched Defendants pursuant to this widespread tactic that GEICO used to unjustly retain commissions due to Plaintiffs and the other Class members.

---

[9] "Sell" and "sold" are used synonymously throughout this Complaint to described "produc[ing]… business."

          ii.     <u>Termination of the Agreements</u>

40.    The Agreements purport to set forth the manner by which Defendants could terminate Plaintiffs' and the other Class members' Agreements.

41.    These termination provisions, particularly those included in the 2020 Agreement, are extremely one-sided in Defendants' favor.

42.    The 2012 Agreement allowed Defendants to terminate the Agreement without cause on 60 days' notice.  It also permits immediate termination for cause.

43.    The 2020 Agreement made it easier for Defendants to terminate their relationships with Plaintiffs and the other Class members more quickly and without cause.  It provides that Defendants may terminate with 30 days' notice, without cause.  It also provides Defendants may immediately terminate for entirely arbitrary reasons, including "in the event that GEICO determines that it is in the best interests of GEICO or its policyholders to terminate."

44.    The 2020 Agreement effectively purports to allow at-will termination and does not require Defendants to repay any of Plaintiffs' and the other Class members' investments upon termination of the Agreement.

45.    As further described below, the termination provisions are unconscionable and unenforceable.  Indeed, no reasonable person would willingly enter into an Agreement whereby they would invest hundreds of thousands of dollars (or more) of their own funds, take on debt, and commit significant time and additional resources, in order to build a GEICO local office, if GEICO could terminate at-will and keep their entire investment as well as all benefits generated by the investment.  Plaintiffs and the other Class members reasonably and justifiably believed, based on the history of the program, and GEICO's representations, that they would, in fact, be business

owners and would not be treated like at-will employees after making significant investments into their local offices.

iii.   Post-Termination Renewal Commissions

46.    Both the 2012 and 2020 Agreements provide that upon termination, final commissions will be paid to the GFR after a period of six months.  This contemplates payment for original commissions earned during the relationships.  These commissions are different from post-termination renewal commissions, which would be paid to Plaintiffs and the other Former Agency Class members if a customer renewed their policy *after* Plaintiffs and the other Former Agency Class members' relationships with Defendants ended.

47.    Both the 2012 Agreement and the 2020 Agreement also provide that during their relationship with Defendants, Plaintiffs and the other Class members would receive commissions when their customers renewed their policies with Defendants.  In other words, payment to Plaintiffs and the other Class members is due, not only when a customer first acquires a policy, but when that policy is renewed.

48.    There is a key difference in the 2012 Agreement and the 2020 Agreement, however, as it relates to post-termination renewal commissions.

49.    The 2012 Agreement provides, "GFR shall not be entitled to any payments or renewal or service commissions based on renewal occurring subsequent to the termination date of this Agreement."

50.    Defendants unilaterally removed the above-referenced language concerning post-termination renewal commissions from the 2020 Agreement.

51.    The 2020 Agreement also states, "[u]pon termination of this Agreement, a party's obligation shall cease except for those remaining or required to be performed following such termination.  For the avoidance of doubt, the parties agree that those provisions of this Agreement

that logically should survive its termination in order to accomplish its fundamental purposes will do so."

52.     Based on removal of the above-referenced language found in the 2012 Agreement, as well as other contractual commercial factors, Plaintiffs and the other Former Agency Class members are entitled to post-termination renewal commissions under the 2020 Agreements, after Defendants wrongfully terminated those Agreements.

53.     Payment of renewal commissions is a provision that logically survives the termination of the Agreement. That is because Plaintiffs and the other Class members earn renewal commissions automatically after the customer signs up for an original policy and subsequently renews that policy.  In other words, earning a renewal commission is not dependent on any further action by Plaintiffs or the other Class members.

54.     Nonetheless, Defendants have refused to pay post-termination renewal commissions to Plaintiffs and the other Former Agency Class members.

55.     By refusing to pay post-termination renewal commissions, Defendants breached their contracts, acted in bad faith, and unjustly enriched themselves at Plaintiffs' and the Former Agency Class members' expense.

**B.**     ***Defendants Require Significant Investment by Local Agents***

56.     Defendants mandated that Plaintiffs and the other Class members commit and invest their own funds to set up GEICO local offices.

57.     Defendants also mandated certain square footage requirements, unilaterally approved and denied locations, and maintained the right of final approval over décor and other requirements for the GEICO local offices.  Defendants also required and provided signage for the GEICO local offices.

58.     Plaintiffs and the other Class members leased or purchased commercial property in order to establish their GEICO local offices.  Defendants required Plaintiffs and the other Class members to use real estate agents approved by Defendants to secure their office space.

59.     Defendants required Plaintiffs and the other Class members to hire a specific number of employees, all of whom Defendants purportedly retained the ability to terminate.

60.     Defendants required Plaintiffs and the other Class members to invest in marketing, advertising, and promotional efforts, and Defendants retained the authority to approve or deny all marketing materials.

61.     Defendants required Plaintiffs and the other Class members to invest in and develop a "dealership program" through which they would sell GEICO automobile policies through local car dealerships.  Plaintiffs and the other Class members often hired employees and purchased vehicles, as well as engaging in other required significant efforts, in order to build and maintain the dealership program.

62.     Plaintiffs and the other Class members each invested six- and sometimes seven-figures, into their GEICO local agencies.

63.     Plaintiffs and the other Class members invested their own savings and/or secured commercial or private loans to establish their GEICO local agencies.

C.     *Unconscionability of the Termination Provisions*

64.     As described herein, the 2020 Agreement purports to allow Defendants to terminate Plaintiffs' and the other Class members Agreements with 30 days' notice, but without cause, or with no notice whatsoever, "in the event that GEICO determines that it is in the best interests of GEICO or its policyholders to terminate."

65.     This provision, which essentially amounts to an at-will termination provision, without requiring Defendants to repay any of Plaintiffs' and the other Class members' investment, is so oppressive as to be rendered unconscionable.

66.     Defendants' contracts with Plaintiffs and the other Class members were procedurally unconscionable because:

a. The Agreements are contracts of adhesion, drafted by Defendants, for the Defendants' benefit;

b. There is a gross disparity in bargaining power between Defendants on the one hand, and Plaintiffs and the other Class members, on the other;

c. Plaintiffs and the other Class members lacked any meaningful choice when they entered in to the 2020 Agreements.  Those who had prior Agreements with Defendants and had already set up their local agencies and had to sign the 2020 Agreement "as-is," by a GEICO-mandated arbitrary and immovable deadline, or walk away from their significant investments; and

d. When they asked Plaintiffs and the other Class members to sign the 2020 Agreements, Defendants concealed the fact that they did not intend to pay post-termination renewal commissions, and that they intended to terminate the Agreements without cause.

67.     Defendants' contracts with Plaintiffs and the other Class members are substantively unconscionable because:

a. The provisions which purport to allow Defendants to terminate the Agreements at-will, are one-sided and unreasonably favorable to Defendants;

15

b.   It is unreasonably unfair that Defendants would expect Plaintiffs and the other Class members to invest their own money and resources to set up GEICO local offices, when Defendants could retain their entire investments without recourse;

c.   While Defendants framed the relationship to make Plaintiffs and the other Class members believe they were business owners, Defendants concealed the fact that they could take away the "business" at-will, without cause; and

d.   This result is unduly harsh, contrary to public policy, and contrary to the very intent and purposes of the Agreements.

68.   Plaintiffs are entitled to a reasonable opportunity to discover and present evidence as to the commercial setting, purpose, and effect of this unconscionable provision.

**D.   *Defendants Unjustly Retain Customer Premiums That Belong to Local Agencies***

69.   Plaintiffs and the other Class members were only paid under the Agreements, based on the attached commission schedules.  In other words, Plaintiffs and the other Class members were not compensated for their time by Defendants, unless their work resulted in a commission.

70.   GEICO engaged in a number of practices to prevent Plaintiffs and the other Class members from earning commissions.  This included the DP1 process, which typically resulted in Defendants—and *not* Plaintiffs and the other Class members—earning commissions.

71.   Plaintiffs and the other Class members were required to submit customers' applications for insurance policies through Defendants' electronic systems. Defendants often rejected policies through its DP1 process. When a DP1 application is encountered in the system, it results in Plaintiffs and the other Class members not being able to complete the customer's

application in GEICO's system, in order to sell the customer a policy and earn a commission.[10] However, there were still several ways that GEICO itself could complete the application, sell the policy, and earn commissions, which were not shared with Plaintiffs and the other Class members.

72.     One such way is that a customer in the DP1 process could obtain an insurance policy directly from GEICO, because only Defendants, not Plaintiffs or the other Class members, had authority to sell a policy to a customer that had entered the DP1 process.

73.     Sometimes customers in the DP1 process were required to mail paper applications directly to Defendants.  Other times, Defendants, without knowledge of Plaintiffs and the other Class Members, would call the customers directly and offer them a policy, or the customer would buy a policy online directly from Defendants.

74.     If customers in the DP1 process eventually purchased a GEICO policy directly from Defendants through any of these methods, Defendants did not provide any commission to Plaintiffs and the other Class members.  This was true even where Plaintiffs and the other Class members made substantial efforts and expended significant resources to find and recruit the customer.

75.     Another way that Defendants used the DP1 process to misappropriate and retain commissions on premiums that belonged to Plaintiffs and the other Class members, was through their process of improperly and illegally diverting customers secured by Plaintiffs and the other Class members to The General, a different insurance company.  GEICO was appointed to sell The General's products, but Plaintiffs and the other Agency Class members were not.

76.     Similarly, under this process, Defendants refused to write policies to certain customers.

---

[10] To the extent Defendants claim that they retained the right to reject customer policies for any reason, s*ee* 2020 Agreement at Section I.(C) ("Standards of Service"), that provision is also unconscionable and cannot be enforced for the reasons described above.

77.     Instead, Defendants would inform the customer that they could obtain a policy from The General, which would be sold by Defendants, rather than by Plaintiffs and the other Agency Class members.

78.     Defendants received payments from The General, at the expense of Plaintiffs and the other Class members, for customers improperly and illegally diverted in the above-referenced manner.

79.     Plaintiffs and the other Class members did not receive any payments for customers improperly and illegally diverted to GEICO, who sold The General's policies and retained all monies obtained from those transactions, for their financial benefit and to the detriment of Plaintiffs and the other Class members.

80.     Defendants also used other improper and illegal methods to retain premiums on which commissions should have been paid to Plaintiffs and the other Class members. These improper and illegal methods include, but are not limited to, directing or rerouting calls that came through its call center (including calls made directly to the phone numbers of Plaintiffs and the other Class members) and that should have gone to Plaintiffs and the other Class members to other GEICO local agents or to GEICO corporate, so that Plaintiffs and the other Class members would not gain the benefit of customer commission payments.

81.     Defendants also required Plaintiffs and the other Class members to provide customer service support to GEICO corporate customers and customers of other Class members, whose calls were routed to Plaintiffs and the other Class members, and who had to provide customer service without receiving any payment for their work.[11]  Plaintiffs and the other Class members are entitled to compensation for this work.

---

[11] Contrary to GEICO's normal practice of not paying Plaintiffs and the other Class members for this customer service work, during COVID-19 when many GEICO call-center employees were working from

E.   ***Defendants Wrongfully and Illegally Terminate the Former Agency Class Members***

82.   On or around March 21, 2023, Defendants terminated their relationship with Plaintiff Steve Ching Insurance, Inc.

83.   On or around March 21, 2023, Defendants terminated their relationship with Plaintiff Kim Dao Agency, LLC.

84.   Defendants also terminated their relationship with each of the Former Agency Class members.

85.   The Former Agency Class members lost the value of their businesses, including their investments, their books of business (*i.e.*, all their customers and potential customers), goodwill, and future earning potential.

86.   Even after their terminations, GEICO continues to benefit from the work and goodwill of Plaintiffs and the Former Agency Class members.  For example, GEICO continues to enrich itself by using their agencies or names in GEICO marketing and other business deals.

87.   Although Plaintiffs and the Former Agency Class Members are entitled to post-termination renewal commissions under the 2020 Agreement, Defendants wrongfully refuse to pay the Former Agency class members post-termination renewal commissions.

88.   Accordingly, Defendants have misappropriated, unjustly retained, or stolen renewal commissions that belong to the Former Agency Class members who are parties to the 2020 Agreement.

---

home, GEICO sometimes paid Plaintiffs and the other Class members a set amount based on handling a threshold number of service calls.  This shows that GEICO could have done the right thing outside of this specific time frame, and regularly paid Plaintiffs and the other Class members for their work.  But they didn't.

## V.       CLASS ACTION ALLEGATIONS

89.      Plaintiffs brings this action pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4)

of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

90.      Plaintiffs seek to represent a class (the "Agency Class") defined as:

All current and former GEICO local agencies who worked for GEICO pursuant to
a GEICO Field Representative Agreement at any time during the relevant time
period.

91.      Plaintiffs also seek to represent a subclass (the "Former Agency Class") defined as:

All former GEICO local agencies whose GEICO Field Representative Agreement
was terminated by GEICO at any time during the relevant time period.

92.      Members of the Agency Class and Former Agency Class are collectively referred

to herein as "Class" members, or the "Class."

93.      Excluded from the Class are Defendants and any of their members, affiliates,

parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities;

and the Court staff assigned to this case and their immediate family members.  Plaintiffs reserve

the right to modify or amend the Class definitions, as appropriate, during the course of this

litigation.

94.      This action has been brought and may properly be maintained on behalf of the Class

proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

95.      **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The proposed Class are

sufficiently numerous that individual joinder of all Class members is impracticable.  While

Plaintiffs are informed and believe that there are over 300 Agency Class Members and over 50

subclass members of the Former Agency Class, the precise number of Class members is unknown

to Plaintiffs, but can be ascertained from Defendants' books and records. Class members may be

notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

96.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2), 23(b)(3), and 23(c)(4).**   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, within the meaning of Fed. R. Civ. P. 23(a)(2) and (b)(3). Class treatment of common issues under Fed. R. Civ. P. 23(c)(4) will also materially advance the litigation. Common questions of fact and law affecting Class members include, without limitation:

a.  Whether Defendants breached their contracts by terminating Plaintiffs' and the Former Agency Class members' Agreements;

b.  Whether the Agreements' termination provisions are unconscionable;

c.  Whether Defendants unjustly enriched themselves by terminating Plaintiffs' and the Former Agency Class Members' Agreements;

d.  Whether Defendants breached their contracts by refusing to pay Plaintiffs and the Former Agency Class members post-termination renewal commissions;

e.  Whether Defendants unjustly enriched themselves by failing to pay Plaintiffs and the Former Agency Class members post-termination renewal commissions;

f.  Whether Defendants unjustly enriched themselves by taking commissions or payments for themselves as a result of diverting customers secured by Plaintiffs and the Agency Class members, including through the DP1 process;

g.  Whether the provision of the Agreement stating that GEICO may refuse to write any policy, in its discretion, is unconscionable.

h. The appropriate measure of damages to award Plaintiffs and the other Class members.

97. **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members were all similarly affected by Defendants' actions and inactions, and all entered into an Agreement with Defendants.  Plaintiffs' claims are based upon the same legal theories as those of the other Class members.  Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

98. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to include sales tax, title transfer fees, and tag transfer fees in total loss situations, and Plaintiffs intend to prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

99. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds that apply generally to Plaintiffs and the other Class members, so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

100. **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy,

and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the Class members to individually seek redress for Defendants' wrongful conduct.  Further, individualized litigation would burden the Courts and create a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   CLAIMS ALLEGED

### COUNT I
**Breach of Contract – Termination**
**Plaintiffs and the Former Agency Class**

101.    Plaintiffs repeat and allege the allegations in Paragraphs 1-100, above, as if fully alleged herein.

102.    Plaintiffs bring this claim individually and on behalf of the other Former Agency Class members.

103.    Plaintiffs and the Former Agency Class members entered into substantially identical Agreements with Defendants to provide services to customers selling Defendants' products.

104.    Defendants breached their contracts by wrongfully terminating the substantially identical contracts with Plaintiffs and the Former Agency class members.

105.    As a result of these wrongful terminations, Plaintiffs and the Former Agency Class members lost the value they invested in their local offices, future earnings in the form of renewal

commissions, their books of business (*i.e.*, all their customers), goodwill, and future earning potential.

106.     To the extent the Agreements purport to allow termination, without compensation, the termination provisions are both procedurally and substantively unconscionable, and should be invalidated by the Court.

107.     As a direct and proximate result of Defendants' breach of contract, Plaintiffs and the Former Agency Class members have suffered damages, including, but not limited to, loss of the value they invested in their local offices, future earnings in the form of renewal commissions and future potential commissions, their books of business (*i.e.*, all their customers), and goodwill.

**<u>COUNT II</u>**
**Unjust Enrichment – Termination and Renewal Commissions**
**Plaintiffs and the Former Agency Class**

108.     Plaintiffs repeat and allege the allegations in Paragraphs 1-100, above, as if fully alleged herein.

109.     Plaintiffs bring this claim individually and on behalf of the other Former Agency Class members, and in the alternative to Counts I and III.

110.     Plaintiffs and the Former Agency Class members each invested significant time and resources to facilitate and maintain a GEICO local office, as required by Defendants. In doing so, Plaintiffs and the Former Agency Class members conferred a benefit upon Defendants by selling insurance policies for Defendants.

111.     Plaintiffs and the Former Agency Class members each invested significant time and resources to recruit customers and sell them Defendants' products, with the understanding that they would receive renewal commissions when those customers renewed their insurance contracts with Defendants.

112.    Plaintiffs and the Former Agency Class members should have received post-termination renewal commissions, even after their relationships with Defendants ended.

113.    Defendants wrongfully terminated the relationships with Plaintiffs and the Former Agency Class members, and knowingly retained the benefits provided by Plaintiffs and the Former Agency Class members, including goodwill, books of business, and renewal commissions.

114.    It would be inequitable to allow Defendants to retain the benefit of the fruits of Plaintiffs' and the other Former Agency Class members' labor without payment of its value.

115.    As a direct and proximate result of Defendants' unjust conduct, Plaintiffs and the Former Agency Class members have suffered damages.

**COUNT III**
**Breach of Contract – Renewal Commissions**
**Plaintiffs and the Former Agency Class**

116.    Plaintiffs repeat and allege the allegations in Paragraphs 1-100, above, as if fully alleged herein.

117.    Plaintiffs bring this claim individually and on behalf of the other Former Agency Class members.

118.    Plaintiffs and the Former Agency Class members entered into substantially similar Agreements with Defendants to provide services to customers selling Defendants' products.

119.    Pursuant to the 2020 Agreement, Plaintiffs and the Former Agency Class members are entitled to continue receiving renewal commissions after the termination of their agreements with Defendants.

120.    Defendants breached their contracts with Plaintiffs and the Former Agency Class members by failing to pay post-termination renewal commissions to Plaintiffs and the Former Agency Class members.

121.     As a direct and proximate result of Defendants' breach of contract, Plaintiffs and the Former Agency Class members have suffered damages.

**COUNT IV**
**Unjust Enrichment – Misappropriation of Commissions**
**Plaintiffs and the Agency Class**

122.     Plaintiffs repeat and allege the allegations in Paragraphs 1-100, above, as if fully alleged herein.

123.     Plaintiffs and the Agency Class Members entered into relationships with Defendants where they recruited customers for Defendants and sold those customers Defendants' products.

124.     Plaintiffs provided a valuable service by recruiting customers for Defendants and performing the work to sell them Defendants' products.

125.     After Plaintiffs and the Agency Class members spent the time, energy, and resources to successfully recruit customers and attempt to sell them Defendants' products, Defendants refused to allow Plaintiffs and the Agency Class members to sell Defendants' products to those customers.

126.     Through the DP1 Process, including selling customers GEICO policies directly, selling policies from The General, and other unjust practices, Defendants retained commissions for themselves that should have gone to Plaintiffs and the other Agency Class members, while refusing to pay commissions to Plaintiffs and the Agency Class members.

127.     It would be inequitable for Defendants to retain the benefits related to these customers, without paying commissions to Plaintiffs and the Agency Class members.  Plaintiffs and the Agency Class members are entitled to commissions related to all policies which they worked to retain, and which Defendants kept for themselves.

128.     As a direct and proximate result of Defendants' unjust conduct, Plaintiffs and the Agency Class members have suffered damages.

## VII.     REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a.     Enter an Order certifying the above-defined Classes and designating Plaintiffs as Class Representatives, and Plaintiffs' counsel as Class Counsel;

b.     Award all monetary relief to which Plaintiffs and the other Class members are entitled, including as set forth in Counts I-IV, above;

c.     Award pre- and post-judgment interest;

d.     Award reasonable attorneys' fees and costs to Plaintiffs' counsel; and

e.     Grant such further and other relief as this Court deems appropriate.

## VIII.     JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated:  November 7, 2023

Respectfully submitted,

s/ Amy E. Keller

Benjamin Crump*
Desiree Austin-Holliday*
**BEN CRUMP LAW, PLLC**
122 South Calhoun Street
Tallahassee, Florida  32301
(800) 691-7111
ben@bencrump.com
desiree@bencrump.com

Adam J. Levitt*
Amy E. Keller
Laura E. Reasons*
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
lreasons@dicellolevitt.com

Diandra S. Debrosse Zimmermann*
Eli Hare*
**DiCELLO LEVITT LLP**
505 Twentieth Street North, Suite 1500
Birmingham, Alabama  35203
 (205) 855-5700
fu@dicellolevitt.com
ehare@dicellolevitt.com

Kenneth P. Abbarno*
Justin Hawal*
**DiCELLO LEVITT LLP**
8160 Norton Parkway
Mentor, Ohio  44060
(440) 953-8888
kabbarno@dicellolevitt.com
jhawal@dicellolevitt.com

Eviealle Dawkins*
**DiCELLO LEVITT LLP**
1101 Seventeenth Street, NW, Suite 1000
Washington, DC  20036
(202) 975-2288
edawkins@dicellolevitt.com

*Counsel for Plaintiffs and the Proposed Classes*

*Motion for *pro hac vice* admission to be filed