**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

STEVE CHING INSURANCE, INC., *

Plaintiff, *

v. * Civ. No. 8:23-cv-3033-PX

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, *et al*,

*

Defendants.

***

**MEMORANDUM OPINION**

Pending is Defendants Geico Insurance Agency, Inc. and Government Employees Insurance Company (together "GEICO")'s motions for summary judgment and to exclude the expert opinion of Branko Jovanovic on damages (ECF Nos. 140 & 143).[1] Also pending is Plaintiff Steve Ching Insurance, Inc. ("Steve Ching")'s motions to certify the class and to exclude the expert opinion of Dr. Andrew Hildreth. ECF Nos. 132 & 171.[2] The motions have been fully briefed, and the Court held a hearing on October 21, 2026. For the following reasons, Steve Ching's motion to certify class is denied, the motions to exclude expert damages opinions are denied as moot, and GEICO's motion for summary judgment is granted.

## I. Background

GEICO is a nationwide automobile insurer that retains insurance representatives like Steve Ching to sell its policies. Between 2018 and 2023, Steve Ching agreed to be a GEICO Field Representative ("GFR") pursuant to a written agreement. Steve Ching first signed with GEICO in

---

[1] GEICO also moved to strike Steve Ching's 11-page attachment of "disputed facts" that effectively extends the response to summary judgment beyond the page limits set forth in Local Rule 105.3. ECF No. 187. The Court agrees and grants the motion. But even if the Court considered the attachment, it would not change the outcome.

[2] The parties have also filed several motions to seal memoranda and exhibits. ECF Nos. 134, 139, 142, 145, 163, 166, 169, 172, 180, 183, 186, 190, & 198. The parties agree that certain proprietary business information compels sealing, and the Court concurs. The motions are granted.

2018 (the "2018 Agreement"), ECF No. 133-16, and next entered into a revised agreement in 2020 (the "2020 Agreement" or "Agreement") that lies at the heart of this litigation. ECF Nos. 140-6 & 140-7.

The 2020 Agreement unambiguously states that GEICO agrees to retain the GFR as an "independent contractor captive agent" to sell insurance policies on its behalf. ECF No. 140-6 at 2. The Agreement also states that GEICO "retains all control, privileges and powers as respects to its policies and policy holders," *id.*, and makes clear that *either* party may terminate the GFR relationship with 30 days advance written notice. *Id.* at 7 ("This Agreement may be terminated by GEICO or GFR on 30 days prior written notice."). Once the termination provision is invoked, GEICO agrees to issue a "final commission check" after six months to allow the parties time to reconcile outstanding deductions and offsets. *Id.*

The 2020 Agreement also identifies as the "sole and complete compensation" for the GFR the "commissions on business produced by GFR as set forth in the applicable schedule of commissions attached hereto and incorporated into this Agreement." ECF No. 140-6 at 7. Each incorporated commissions schedule, in turn, clearly states that the "**GFR WILL NOT RECEIVE A COMMISSION FOR ANY SCENARIO THAT IS NOT EXPRESSLY ADDRESSED IN THE COMMISSION TABLE OR IN THE TERMS BELOW**." *Id.* at 10, 13, 17, 21 (emphasis in original). Each commission schedule includes a table that identifies the percentage commissions for each type of policy "sold by the GFR." *See generally* ECF No. 140-6 at 10–20. When the sold policy is renewed, the GFR receives separately identified "renewal" commissions, but only if the GFR secures the policy renewal. The schedules make clear that "renewal commissions" are available for renewals generated by the GFR, as reflected in the GFR's Source of Business Code ("SOBC"). ECF No. 140-6 at 11, 14, 18; ECF No. 140-7 at 2, 5, 9, 15, 22–23. An SOBC is "[t]he

unique numeric code assigned to each GFR" that identifies "a particular GFR office." ECF No. 140-6 at 10, 13, 17, 21; ECF No. 140-7 at 4, 8, 14, 20. The schedules further clarify that no commissions are available for policies renewed under a "different SOBC." ECF No. 140-6 at 11, 14, 18; ECF No. 140-7 at 2, 5, 9, 15. Thus, once GEICO terminates a GFR, no further policies – renewal or otherwise – will issue under the GFR's SOBC, and so, the terminated GFR will receive no further commissions on such policies.

In the ordinary course, a GFR facilitates applications for potential customers to purchase insurance. ECF No. 140-6 at 2–3; ECF No. 136-3 at 63:9–13. GEICO's underwriting team reviews the applications and compares the applicant information to that included in various available databases. ECF No. 140-8 at 195:17–24; ECF No. 140-5 ¶ 7. GEICO next authorizes the GFR to sell the policy to the applicant. *Id.*; ECF No. 132-9 at 91:19–22.

But where discrepancies exist, GEICO identifies the applicant as a "DP-1" and requires the applicant to complete and submit to GEICO a paper application. ECF No. 140-8 at 195:17–196:7. If GEICO ultimately approves the DP-1 application, then the applicant is free to purchase the policy from the originating GFR, GEICO directly, or another GFR. *Id.* at 196:8–16; ECF No. 140-5 ¶ 9. Per the 2020 Agreement, only the GFR who *sold* the policy receives the commissions for a DP-1 applicant, regardless of who initiated contact with the applicant. ECF No. 140-6 at 7, 10, 13, 17, 21; ECF No. 140-7 at 4, 8, 14, 20.

On November 16, 2020, GEICO informed the GFRs that it would revise the 2018 Agreement, and that all GFRs would be expected to sign the 2020 Agreement by no later than December 31. ECF No. 181-3. GEICO also reviewed with the GFRs the changes between the 2018 and 2020 Agreements via webinar and Powerpoint presentation. ECF Nos. 181-3 & 181-4. A close comparison of the 2018 and 2020 Agreements reflects two amendments relevant to this

suit. First, the 2020 Agreement eliminated a provision which expressly stated that GFRs are not entitled to renewal commissions after termination. *Compare* ECF No. 133-16 at 13 *with* ECF No. 140-6 at 7. Second, the 2020 Agreement shortened the written notice period for termination from 60 days to 30. *Compare* ECF No. 133-16 at 12 *with* ECF No. 140-6 at 7.

Steve Ching executed the 2020 Agreement on December 21, 2020. ECF No. 140-6 at 2. A little over two years later, on March 21, 2023, GEICO provided Steve Ching with 30 days' written notice of its decision to terminate him as a GFR. ECF No. 140-13. Steve Ching, in turn, filed suit, alleging his termination was wrongful and demanding that he and all similarly situated GFRs whom GEICO terminated be paid "renewal commissions" (Counts I, II, & III). ECF No. 1 ¶¶ 104, 114, 120. Steve Ching also sues for unjust enrichment as to all GFRs, terminated or otherwise, premised on the theory that GEICO's DP-1 practice improperly diverts insurance applicants to GEICO and denies GFR commissions rightfully earned as a result (Count IV). *Id.* ¶ 127.

GEICO initially moved to dismiss the Complaint, which the Court denied after a hearing. ECF No. 68.[3] Formal discovery on the individual and class claims ensued. When discovery was substantially complete, Steve Ching moved for class certification. ECF No. 132. GEICO, in turn moved for summary judgment on Steve Ching's individual claims. ECF No. 140. While these motions were pending, the parties completed fact discovery and did not supplement the summary judgment record. ECF Nos. 174 & 175. Thus, the motions are fully ripe and ready for review.

## II. Order of Motions

[3] The case was originally assigned to the Honorable Peter J. Messitte and was transferred to the undersigned on January 23, 2025 upon Judge Messitte's death.

As a preliminary matter, the Court must address the order in which the motions should be decided. Steve Ching urges that if the Court is inclined to grant summary judgment in GEICO's favor on his individual claims, it should deny the class certification motion as moot and allow class counsel time to consider whether it would move to substitute Steve Ching with a new class representative. ECF No. 204 at 21:13–22:20, 66:3–68:7. GEICO objects to this approach, rightly contending that Steve Ching knew the perils of proceeding to class certification without an alternative class representative,[4] and to handle as he suggests would visit unfair prejudice on GEICO. *Id.* at 45:17–48:5, 69:14–70:10.

The Court retains wide discretion as to the order of resolution. *See Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 679 (D. Md. 2017) (citing *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 896 (8th Cir. 2014); *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C. Cir. 2001); Fed. R. Civ. P. 23(c)(1) advisory committee's note to 2003 amendment). Often, interests in fairness and efficiency point toward resolving the certification question before reaching summary judgment arguments, but the Court is not "barred" from rendering a summary judgment decision first. *See Curtin*, 275 F.3d at 92; *see also Danny B. ex rel. Elliott v. Raimondo*, 784 F.3d 825, 838 (1st Cir. 2015); *Ginwright*, 280 F. Supp. 3d at 679. Here, the parties have expended significant time and resources in exploring the propriety of class certification. ECF Nos. 132, 136, 162, 174, 176. The Court can adequately reach the merits of the certification request and sees no advantage to reaching the viability of Steve Ching's individual claims first. Resolving both motions also brings certainty and finality to this chapter of the litigation. Accordingly, the Court first turns to Steve Ching's motion to certify the class.

## III. Motion to Certify the Class

---

[4] The Court previously granted the motion to dismiss with prejudice the only other class representative. ECF Nos. 122 & 124.

Steve Ching seeks certification of the proposed Agency Class defined as "all current and former [GFRs] who worked for GEICO pursuant to a [GFR] Agreement at any time during the relevant time period and did not enter a confidential settlement agreement with GEICO regarding their termination." ECF No. 132-1 at 9. For the Agency Class, he asks the Court to certify the unjust enrichment claim in Count IV based on the alleged DP-1 diverted commissions (the "Agency Class"). He also seeks certification for a much smaller subclass of terminated GFRs (the "Former Agency Subclass") for all remaining counts, defined as GFRs "terminated by GEICO without cause during the relevant time period and [who] did not enter a confidential settlement agreement with GEICO regarding their termination." *Id.*

The Court retains broad discretion to determine the propriety of class certification under Federal Rule of Civil Procedure 23. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006) (quoting *Lienhart v. Dryvit Sys. Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)). The party seeking certification bears the burden of proving the case is suited to classwide treatment. *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 2845 (2025). The Court begins with "an implicit threshold requirement that the members of a proposed class be 'readily identifiable'" or "ascertainab[le]." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)); *see also Krakauer v. Dish Network, L.L.C*, 925 F.3d 643, 654–55 (4th Cir. 2019) ("[A] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." (quoting *EQT Prod. Co.*, 764 F.3d at 358)). While not every individual of the class needs to be identifiable at the time of certification, the plaintiff must advance some mechanism to ascertain class members "without extensive and individualized fact-finding or

'mini-trials.'" *EQT Prod. Co.*, 764 F.3d at 358 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

If the class is ascertainable, the movant must next demonstrate the class meets all four Rule 23(a) requirements: namely, (1) numerosity—"the class is so numerous that joinder of all members is impracticable;" (2) commonality—"there are questions of law or fact common to the class;" (3) typicality—"the claims or defenses of the representative parties are typical of the claims or defenses of the class; and" (4) adequacy—"the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "These four requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Krakauer*, 925 F.3d at 654 (citation modified) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). A failure of proof on any Rule 23(a) factor compels denial of class certification. *Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925, 930 (4th Cir. 2025).

If the movant satisfies Rule 23(a), he must next show that the class falls within "one of three categories enumerated in Rule 23(b)." *Mr. Dee's Inc.*, 127 F.4th at 930 (quoting *Gunnells v. Healthplan Servs., Inc.*, 248 F.3d 417, 423 (4th Cir. 2003)). Steve Ching seeks to certify the Agency Class and the Former Agency Subclass pursuant to Rule 23(b)(3) which requires the Court to find that "questions of law or fact common to class members predominate," and that class litigation "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). He also asks to certify Count I as an "issues class" under Rule 23(c)(4), which is proper only if the movant first satisfies the Rule 23(a) and (b) requirements as to a specific claim. *Gunnells,* 348 F.3d at 441.

GEICO does not dispute that the Agency Class and Former Agency Subclass are ascertainable. ECF No. 136. The proposed classes are defined objectively, and GEICO possesses

records of all current and former GFRs. ECF No. 133-3 at 123:9–17; ECF No. 132-8 at 31:2–4. GEICO also maintains records of which GFRs had applications subject to the DP-1 process. ECF No. 137-10 at 10. Accordingly, the Court turns Rule 23(a) and (b) requirements for the Agency Class.

**A. Agency Class**

The Agency Class, says Steve Ching, is capable of classwide treatment regarding GEICO's alleged systemic "diversion" of DP-1 applicants to purchase policies directly from GEICO and thus deprive Agency Class GFRs of commissions. ECF No. 1 ¶¶ 122–128. To demonstrate this diversion phenomena on a classwide basis, the parties sampled the data for 18 GFRs selected randomly from the putative class of roughly 273 to determine for each selected GFR which of the identified DP-1 applicants ultimately purchased a policy, and of those, which purchased the policy through the GFR or GEICO. The sample set included [redacted] DP-1 applicants distributed at varying levels across the 18 selected GFRs. ECF No. 137-10 at 10.[5] The evidence indisputably shows that at least 38.9% of sampled GFRs had no DP-1 applicants who ever purchased a policy through GEICO and thus no injury. *Id.* Of the [redacted] DP-1 applicants who ultimately purchased a GEICO policy, a [redacted] purchased from the *original* GFR, and only [redacted] purchased from either GEICO or another affiliate. *Id.* A small number of DP-1 applicants [redacted] bought policies through other GFRs who themselves are members of the putative class. *Id.* [6]

From this, GEICO argues that the class lacks Article III standing because the class includes a wide swath of "uninjured" GFRs. ECF No. 136 at 17–20. Relatedly, GEICO contends that

[5] The redacted text includes proprietary business information filed under seal pursuant to Local Rule 105.11 and the parties' protective Order at ECF No. 102. Accordingly, the Court filed an unredacted version of this Opinion under seal at ECF No. 205.

[6] Steve Ching obliquely argues that the data is "misleading" and "incomplete" based on the sample size. ECF No. 162 at 3–5. Chief United States Magistrate Judge, Timothy Sullivan, presided over class discovery, and after full briefing and a hearing, rejected Steve Ching's challenges. *See* ECF Nos. 110, 117, & 118.

questions of concrete injury necessary for the putative class member's standing to sue implicate both commonality and predominance. *Id.* at 22–24. "Although the potential that the class includes uninjured individuals implicates both Article III and Rule 23(b)(3)'s [predominance] requirements, these inquiries are separate." *Spurlock v. Wexford Health Sources, Inc.*, 175 F.4th 232, 250 (4th Cir. 2026) (citations omitted). Thus, as the Fourth Circuit directs, the Court will address each separately, beginning with Article III standing. *Id.*

Without doubt, "[t]o have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *Trans Union, LLC v. Ramirez*, 594 U.S. 413, 417 (2021). This proposition applies with equal force in the class action context. Indeed, "every class member must have Article III standing in order to recover individual damages." *Id.* at 431. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C. J., concurring)). Nor can standing be "dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* (citations omitted). *See also Alig v. Rocket Mortg., LLC*, 126 F.4th 965, 974 (4th Cir. 2025); *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 295 (4th Cir. 2024).

But at the class certification stage, only the named plaintiff "anchor[s] th[e] court's jurisdiction," and so, "[w]here a class representative has standing, 'the case is justiciable and the proponent of the class suit need not demonstrate that each class member has standing' to obtain class certification." *Spurlock*, 175 F.4th at 251 (quoting *Carolina Youth Action Project*, 60 F.4th 770, 779 (4th Cir. 2023)). *Cf. Mrs. Dee's*, 127 F.4th at 934 (noting the Court "left open 'the distinct question whether every class member must demonstrate standing *before* a court certifies a class."

(quoting *Trans Union*, 594 U.S. at 431 n.4 (emphasis in original))). Thus, the standing question must focus on the class representative, here Steve Ching, and need not make "individualized determinations about the standing of each unnamed class member." *Spurlock*, 175 F.4th at 252.

GEICO advances no real argument that Steve Ching lacks standing, and he has demonstrated that three DP-1 applicants purchased a policy through GEICO instead of him. Because the class representative satisfies standing, then certification cannot be denied on this basis. *Spurlock*, 175 F.4th at 252. That said, "concerns about potential uninjured, unnamed class members are more appropriately addressed" in Rule 23(b)(3)'s predominance requirement. *Id.* Here, questions of concrete injury compel individualized assessments that predominate over common questions, thus defeating class certification. Predominance and commonality are intertwined so the Court analyzes them together. *Stafford v. Bojangles' Restaurants, Inc*, 123 F.4th 671, 679 (4th Cir. 2024) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). Predominance under Rule 23(b)(3) requires the movant to show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This analysis "is a qualitative one, a question of whether the complexities of common issues outweigh that of individual issues, even if quantitatively there are more individual issues." *Harbourt v. PPE Casino Resorts Md., LLC*, Civ. No. CCB-16-339, 2017 WL 281992, at *6 (D. Md. Jan. 23, 2017) (citing *Gunnells*, 348 F.3d at 429). The showing turns on whether sufficient "questions common to the class predominate," not whether "those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013) (citation modified). This is because the Rule 23 inquiry focuses not on a merits-based resolution, but whether the method of resolution is best suited to class wide treatment. *Id.* Likewise with commonality, the movant must show that the "common

contention" is "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Stafford,* 123 F.4th at 679 (quoting *Wal-Mart Stores,* 564 U.S. at 350).

It is well settled that when a putative class demands individualized assessments of concrete injury, this poses significant predominance problems. *Cf. Krakauer*, 925 F.3d at 657 (favorably citing "other courts [that] address the question of uninjured plaintiffs . . . through the lens of predominance."). *Spurlock*, 175 F.4th at 252 (noting when a significant portion of class members are demonstrably "uninjured," "then the proposed class may lack predominance"); *see also Mr. Dee's Inc.*, 127 F.4th at 933–34 (concluding district court had not abused its discretion in denying certification where 32% of the putative class had no injury, thus presenting "predominance and standing issues."). The record viewed most favorably to the putative class demonstrates the fundamental question of standing will require individualized inquiry. Based on the class sampling, a significant number of putative class members suffered no injury. The Court will have to assess each GFR's DP-1 policy history to determine whether they can remain in the litigation for Article III purposes. This individualized inquiry alone eclipses any common questions of law or fact. *See Mr. Dee's Inc.*, 127 F.4th at 933.

Steve Ching does not dispute this basic proposition. Instead, he moves the goal posts, attempting to redefine the "injury" the putative class has suffered. The Complaint plainly alleges that *GEICO* had been "unjustly enriched" because *GEICO* had sold policies to the DP-1 applicants instead of the originating GFRs. ECF No. 1 ¶¶ 122–128. Now that the evidence unearthed the difficulties with this theory, Steve Ching contends that the "injury" also includes DP-1 policies sold by other GFRs. ECF No. 162 at 3–4. But policies sold by other GFRs cannot be said to have unjustly enriched GEICO. Rather, such diversion would simply enrich another putative class

member. Further, Steve Ching cannot rely on a mere "risk" of harm arising from the possibility that a DP-1 applicant may purchase a policy from GEICO instead of the originating GFR. *See Alig*, 126 F.4th at 974 ("to establish their standing to recover damages, the plaintiffs cannot rely on a 'mere risk of future harm.'") (quoting *Trans Union*, 591 U.S. at 437)).

In addition to individualized inquiries regarding injury, the claim requires individualized proof on the unfairness of the claimed "enrichment" to GEICO, further dooming predominance and commonality. To succeed on an unjust enrichment claim, a plaintiff must show that it conferred a benefit on the defendant under circumstances making it inequitable for the defendant to retain the benefit without payment for its value. *See MTBR LLC v. D.R. Horton, Inc.*, Civ. No. RDB-07-3363, 2008 WL 3906768, at *11 (D. Md. Aug. 22, 2008) (citing *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n.7 (2000)).[7] So even if there could be a narrowly drawn class of "injured" GFRs, each would require individualized proof on what made the "diversion" of the DP-1 policy to GEICO "unjust." For example, a factfinder would have to sift through GFR-specific evidence regarding which party contributed to the consummation of the policy sales to determine whether GEICO's claimed stripping of the commissions was indeed inequitable. *See Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 301 (2007). This "fact-specific" balancing of the "equities" will overshadow any common questions. *Id.* (quoting John W. Wade, *Restitution for Benefits Conferred Without Request*, 19 Vand. L. Rev. 1183, 1185 (1996)). Accordingly, Steve Ching fails to satisfy commonality and predominance under Rule 23.

---

[7] GEICO argues that because the 2020 Agreement's choice-of-law provision does not cover unjust enrichment claims, predominance is also defeated because the claims require individualized assessments of applicable state law depending on where each GFR executed the contract. ECF No. 136 at 27. Because predominance and commonality fail for other reasons, the Court need not reach this question.

In sum, looming proof problems as to injury for putative class members will necessitate individualized assessments of each GFR's standing to sue. Similar demands of individualized proof regarding as to the unjust enrichment claim mean few efficiencies will be gained through classwide treatment. Thus, predominance and commonality fall short, and the motion for class certification must be denied for the Agency Class.

**B. Former Agency Subclass**

Turning next to the Former Agency subclass, which, as a reminder, are the terminated GFRs who claim entitlement to renewal commissions as articulated in Counts I, II and III. As with the Agency Class, the Former Agency Subclass must independently satisfy the Rule 23(a) and (b) requirements to proceed. *See Coreas v. Bounds*, Civ. No. TDC-20-0780, 2020 WL 5593338, at *8 (D. Md. Sept. 18, 2020). The subclass fails on numerosity alone.

To satisfy numerosity, Steve Ching must show the proposed class to be so numerous that joining each putative member would be "impracticable." Fed. R. Civ. P. 23(a)(1). Although "numbers alone are not controlling," *Ballard v. Blue Shield of S.W. Va., Inc.*, 543 F.2d 1075, 1080 (4th Cir. 1976), and no one "mechanical test" applies, *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984), "a class that encompasses fewer than 20 members will likely not be certified." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (quoting 1 *Newberg on Class Actions* § 3:12 (5th ed. 2021)). Steve Ching does not come close to making that showing.

At best, the putative class tops out at 11 members and is likely fewer than 10. ECF No. 132-1 at 19; ECF No. 162 at 6. At least one terminated GFR whom Steve Ching includes as part of the subclass has pursued individual claims for post-termination renewal commissions against GEICO. *See JCM Ins. Servs., Inc. v. Gov't Emps. Ins. Co.*, No. 23-CV-1801 (N.D. Ohio) (James Moyer pursuing claims against GEICO); ECF No. 137-15. And inclusion of two other putative

members is hotly disputed. ECF No. 136 at 15 n.2; ECF No. 162 at 6 n.2. Nor has Steve Ching demonstrated any impracticability of joining ten other aggrieved former GFRs instead of proceeding by class action. Because a putative class of this size would be a "jurisprudential rarity," for which no real benefits inure through classwide treatment, the Court declines to certify the subclass. *Cf. Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 520 (W.D. Wash. 2008) (declining to certify a subclass with 17 members); *Marable v. District Hosp. Partners, L.P.*, 2006 WL 2547992, *6–7 (D.D.C. 2006) (declining to certify a subclass of 30 members).

For these reasons, the motion to certify the class is denied. The Court turns next to GEICO's motion for summary judgment on Steve Ching's individual claims.

## IV. GEICO's Motion for Summary Judgment

### A. Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003) (citation omitted).

Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt*,

*Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is warranted. *Celotex*, 477 U.S. at 322.

### B. Counts I and III: Breach of Contract

In Count I, Steve Ching avers that GEICO "wrongfully" terminated him pursuant to the 2020 Agreement. ECF No. 1 ¶¶ 101–107. For Count III, Steve Ching argues that the 2020 Agreement entitles him to post-termination commissions on all "renewed" insurance policies. *Id.* ¶¶ 116–121. GEICO rightly responds that no breach lies where it terminated Steve Ching consistent with the 2020 Agreement. ECF No. 140-1 at 17–19. GEICO similarly contends that several provisions within the 2020 Agreement plainly preclude post-termination renewal commissions. *Id.* at 25–28. The Court considers each claim separately.

As for Count I, the contract claim fails as a matter of law. To survive summary judgment, the plaintiff must adduce some evidence to demonstrate "the existence of a contractual obligation" that the defendant materially breached. *Friedli v. Silver Star Properties REIT, Inc.*, 2024 WL 1406329, at *3 (D. Md. Feb. 15, 2024) (quoting *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 655–57 (2010)). The Court reads the contract as a whole, giving all unambiguous terms their plain and ordinary meaning. *Lithko Contracting, LLC v. XL Ins. Am., Inc.*, 487 Md. 385, 403 (2024). Moreover, where the contract terms are unambiguous, the Court may not "rewrite the terms of a contract, or draw a new contract for the parties." *Calomiris v. Woods*, 353 Md. 425, 445 (1999) (quoting *Canaras v. Lift Truck Services*, 272 Md. 337, 350 (1974)). And certainly not in a manner that would "nullify [a contract's] express terms." *Id.* at 441.

The parties do not dispute that GEICO gave Steve Ching 30 days written notice before terminating him. ECF No. 140-13. Given that either party may terminate the Agreement "on 30 days prior written notice," the claim clearly fails. ECF No. 140-6 at 7. Judgment must be granted in GEICO's favor on Count I.

Steve Ching does not squarely contest this basic fact. Rather, he argues that the breach lies in GEICO's violation of the "implied covenant of good faith and fair dealing." ECF No. 165 at 19–20. Although Maryland recognizes an implied covenant of good faith and fair dealing in all contracts, *Wal-Mart Real Est. Bus. Tr. v. Garrison Realty Invs., LLC*, 657 F. Supp. 3d 757, 767 (D. Md. 2023) (quoting *E. Shore Markets v. JD Assocs. Ltd. P'ship*, 213 F.3d 175, 184 (4th Cir. 2000)), the covenant "cannot be invoked to require a party to take an action contrary to the express terms of a contract." *Mikeron, Inc. v. Exxon Co., U.S.A.*, 264 F. Supp. 2d 268, 273 (D. Md. 2003) (citing *Parker v. Columbia Bank, et al.*, 91 Md. App. 346, 366 (1992)). *See also E. Shore Markets, Inc.*, 213 F.3d at 182. But that is exactly what Steve Ching asks this Court to do; essentially ignore a clear, unambiguous provision that gives *either* party the right to terminate with 30 days' written notice. Because the covenant of good faith and fair dealing cannot save the claim, summary judgment is granted in GEICO's favor on Count I.[8]

Next as to Count III, Steve Ching avers that GEICO breached the 2020 Agreement by refusing to pay him "post termination renewal commissions." ECF No. 1 ¶¶ 116–121. As with all contractual terms, Steve Ching's right to such commissions rises and falls on the plain language of the Agreement, and where the Agreement is silent, "an agent has no right to such commissions." *Travelers Indem. Co. v. Merling*, 326 Md. 329, 336 n.5 (1992) (collecting cases).

---

[8] Nor does GEICO's views on Steve Ching's subpar performance change the analysis. ECF No. 165 at 30. The parties devote many pages to whether Steve Ching fell below GEICO's performance standards. The Court sees no reason to wade into the dispute because GEICO did what the Agreement permits – it terminated Steve Ching with 30 days' advance written notice.

Once again, when reading the Agreement as a whole, Steve Ching retains no right to post-termination renewal commissions. As the Agreement makes plain, a GFR is entitled only to those commissions expressly set forth in the incorporated schedules. ECF No. 140-6 at 7. The schedules next identify the circumstances under which "renewal" policies trigger what are specifically identified as "service commissions," and further make plain that such service commissions *only* lie where the renewal is issued under the "same SOBC." *See* ECF No. 140-6 at 11, 14, 18; ECF No. 140-7 at 2, 5, 9, 15 (identifying percentage commissions for "Renewal same SOBC" but no commissions for "renewal different SOBC"). Because the SOBC is a "unique numeric code assigned to each GFR," a policy that is renewed once the GFR is terminated, by definition, will be one issued either by GEICO itself or a different GFR. ECF No. 140-6 at 10, 13, 17, 21; ECF No. 140-7 at 4, 8, 14, 20. In either event, the renewal will issue under a different SOBC than the one assigned to Steve Ching. Thus, the only fair reading of the Agreement is that once a GFR is terminated, any renewal policies issued thereafter will not entitle the terminated GFR to commissions.

Steve Ching argues the Agreement affirmatively grants post-termination renewal commissions because it does not "condition[] entitlement on continued appointment as a GFR." ECF No. 165 at 21. This is not a fair reading of the 2020 Agreement when taken as a whole. But even if it were, silence in the contract does not entitle an agent to commissions as a matter of law. *Travelers Indem. Co*, 326 Md. at 336 n. 5.

Steve Ching next argues that the Court should read the Agreement's survival provision as commanding post-termination renewal commissions. That provision reads: "[u]pon termination of this Agreement, a party's obligations shall cease except for those remaining or required to be performed following such termination," and that "[f]or the avoidance of doubt, the parties agree

that those provisions of this Agreement that logically should survive its termination in order to accomplish its fundamental purposes will do so." ECF No. 140-6 at 8. Steve Ching contends, without support, that "[p]ayment of earned service commissions on renewals is plainly a "'fundamental purpose' of the Agreement.'" ECF No. 165 at 14. The Court cannot agree.

For one, nothing in the Agreement suggests that payment of post-termination renewal commissions is a "fundamental" purpose when considering the plain language of the agreement *prohibits* the same. Nor can the overbreadth of the survival provision eclipse Maryland's requirement that the right to renewal commissions be plainly and affirmatively expressed. *See Sims Agency, L.L.C. v. Gov't Emps. Ins. Co.*, 159 F.4th 286, 289 (5th Cir. 2025) (concluding that identical survival clause language in a GEICO contract did not grant entitlement to post-termination renewal commission); *SRH Holdings, LLC v. Gov't Emps. Ins. Co.*, Civ. No. 23-CV-10325-DJC, 2026 WL 2254519, at *2 (D. Mass. Aug. 5, 2026) (same). And here, the commission schedules make clear that once a GFR separates from GEICO, renewal commissions do not continue under the GFR's SOBC. Thus, renewal commissions do not flow to the terminated GFR.

Lastly, Steve Ching argues that the "notwithstanding" clause in Section II.A of the Agreement creates ambiguity as to post-termination commissions. ECF No. 165 at 13; ECF No. 140-6 at 5 ("Notwithstanding a cancellation, GFR will be entitled to its commission for the period of time the subject policy was in effect if such business was acceptable to GEICO when initially written"). However, this section covers when commissions are paid upon the cancellation of a policy, which is the opposite of when an insured *renews* the policy. This is why the 2020 Agreement makes clear that a GFR is paid commissions on canceled policies for "period of time the subject policy was in effect." *Id*. Accordingly, when reading the plain and unambiguous terms

of the 2020 Agreement as a whole, Steve Ching is not entitled to post-termination renewal commissions. Summary judgement in favor of GEICO is granted on Count III.

Attempting to save the claim, Steve Ching argues that the relevant change between the 2018 and 2020 Agreements renders the latter "ambiguous" as to entitlement of post-termination renewal commissions. ECF No. 165 at 12. A contract is ambiguous "'if, to a reasonable person, the language used is susceptible of more than one meaning or is of doubtful meaning.'" *Martz v. Day Dev. Co., L.C.*, 35 F.4th 220, 225 (4th Cir. 2022) (quoting *Cochran v. Norkunas*, 398 Md. 1, 17 (2007)). If the contract is ambiguous, "the court must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." *Cty. Commissioners of Charles Cty. v. St. Charles Associates Ltd. P'ship*, 366 Md. 426, 445 (2001). Of course, where extrinsic evidence still leaves genuine issues of fact as to the proper interpretation of the disputed provision, the Court must put the question to the trier of fact. *Washington Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (quoting *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993)); *see Sheridan v. Nationwide Ret. Sols., Inc.*, 313 Fed. App'x 615, 619 (4th Cir. 2009).

Steve Ching fails to explain how the striking of the 2018 provision, ECF No. 133-16 at 13 ("GFR shall not be entitled to any . . . service or renewal commissions based on renewals occurring subsequent to the termination date of this Agreement"), renders the 2020 Agreement ambiguous. At best, striking the provision eliminates redundancy because Maryland law provides the same. *Travelers Indem. Co*, 326 Md. at 336 n. 5. But it does not call into question what the compensation schedules make plain – a GFR is not entitled to renewal commissions once terminated. Indeed, even Steve Ching did not read the 2020 Agreement as providing for post-termination renewal commissions until *after* he talked about the issue with his counsel. ECF No. 140-4 at 54:5–58:10.

Thus, the elimination of the predecessor clause which expressly denied post termination commissions, against the backdrop of Maryland law, is entirely consistent with GEICO's argument that the Agreement does *not* provide for such commissions. On the question of post-termination commissions, the 2020 Agreement is plain and unambiguous.

Steve Ching, in response, pivots to his unconscionability argument. He argues that the 2020 Agreement itself, presented as a "take-it-or-leave-it" moment, gave him no meaningful choice but to sign it, thus entitling him to relief. ECF No. 167 at 18–19.[9] Typically, unconscionability is a defense to a contract enforcement action; it is not used as a sword to obtain affirmative relief. *Trotman v. First Home Mortg. Corp.*, Civ. No. SAG-26-01837, 2026 WL 2606289, at *3 (D. Md. Sept. 3, 2026) (citation omitted). But even if it were available the Steve Ching, he has adduced no evidence that suggests the contract is unconscionable.

A contract is unconscionable where one party lacked "meaningful choice" when entering the agreement and where the "contractual terms . . . unreasonably favor the other party." *Walther v. Sovereign Bank*, 386 Md. 412, 426 (2005) (citing Black's Law Dictionary 1560 (8th ed. 2004)). The party arguing unconscionability must show that the agreement is both "procedurally and substantively unconscionable." *Baron v. Sprint Corp.*, No. JKB-19-1255, 2019 WL 5456796, at *1 (D. Md. Oct. 24, 2019).

Procedural unconscionability "deals with the process of making a contract" and "looks much like fraud or duress." *Freedman v. Comcast Corp.*, 190 Md. App. 179, 208 (2010) (quoting *Walther*, 386 Md. at 426–27). The Court considers whether a contract includes "fine print and convoluted or unclear language;" "deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms;" and "one party's lack of meaningful choice." *Id.*

---

[9] Steve Ching also argues unconscionability as to Count I, the wrongful termination claim. The argument fails as to Count I for the same reasons discussed *infra*.

Substantive unconscionability requires a showing of "extreme unfairness" or deprivation of any "meaningful choice" as to contractual terms that "unreasonably favor the other party." *Baron*, 2019 WL 5456796, at *2 (quoting *Walther*, 386 Md. at 426). A provision is substantively unconscionable when its terms "'unreasonably favor[] . . . the more powerful party,' 'impair the integrity of the bargaining process or otherwise contravene the public interest or public policy,' 'attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law,' or are otherwise 'unreasonably and unexpectedly harsh.'" *Id.* (quoting *Freedman*, 190 Md. App. at 209).

In support of his unconscionability claim, Steve Ching highlights that GEICO presented the contract on a take-it-or-leave-it basis. ECF No. 167 at 18. But a take-it-or-leave it proposition, by itself, does not establish procedural unconscionability. *Walther*, 386 Md. at 430. Nor can Steve Ching's claim of unfair surprise carry the day. ECF No. 167 at 18–19. The record viewed most favorably to him reflects that GEICO alerted its GFRs to the changes in the 2020 Agreement by email on November 16, 2020, and by PowerPoint as part of a webinar meeting where GEICO invited questions or concerns in advance. ECF No. 181-3; ECF No. 181-4. GEICO also gave the GFRs until December 31, 2020, to sign the 2020 Agreement. ECF No. 181-3; ECF No. 181-4 at 16.

Likewise, the Agreement is not substantively unconscionable. The relevant termination provision presented a two-way option for either contracting party to end the relationship with 30 days' written notice. *Cf. Baron*, 2019 WL 5456796, at *2 (explaining provisions are substantively unconscionable where they favor the more powerful party). Nor can the disentitlement to post-termination renewal commissions be substantively unfair when Maryland law presumes the unavailability of post-termination commissions not expressly afforded under the contract.

*Travelers Indem. Co.*, 326 Md. at 336 n.5. So even if Steve Ching could invoke unconscionability here, the record viewed most favorably to him does not support the contention. Summary judgment must be granted in GEICO's favor as to Counts I and III.

The Court next turns to Counts II and IV, unjust enrichment.

**C. Counts II & IV: Unjust Enrichment**

The claims need not detain the Court long because the evidence indisputably supports that the same claims sound in breach of contract. "Where the subject matter of the claim is covered by an express contract between the parties," an unjust enrichment claim cannot proceed. *Janusz v. Gilliam*, 404 Md. 524, 537 (2008) (quoting *Dashiell*, 358 Md. at 96). *See also Gillett v. Tucker*, 317 Or. App. 570, 582 (2022); *Smith v. U.S. Bank, N.A.*, No. CIV. 10-3077-CL, 2011 WL 2470100, at *16 (D. Or. Apr. 22, 2011), *report and recommendation adopted*, No. 1:10-CV-03077-CL, 2011 WL 2469729 (D. Or. June 20, 2011) (unjust enrichment is a "remedial device the law affords where no enforceable contract exists.").[10] Nor do any of the narrow exceptions to this rule apply. True, that where the movant generates evidence of fraud, bad faith, or where the express contract does not fully address the claim, then an unjust enrichment claim can proceed. *AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Restaurants*, 243 Md. App. 62, 72 (2019); *see also Dashiell*, 358 Md. at 100. But the record simply does not support any such exception. Thus, because the 2020 Agreement controls, the unjust enrichment claims fail.

Steve Ching principally responds that the 2020 Agreement does not fully address GEICO's alleged "DP-1 diversions." ECF No. 165 at 24–26. Putting to the side how rarely such an exception has applied, *AAC HP Realty, LLC*, 243 Md. App. at 72 ("no reported decision applying

---

[10] The parties disagree about whether Oregon or Maryland substantive law applies to the unjust enrichment claims. ECF No. 140-1 at 29 n.1; ECF No. 165 at 26–27. The dispute is academic, however, because the substantive law of either state compels the same outcome. *See World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., Ltd.*, 783 F.3d 507, 514–15 (4th Cir. 2015) (citation omitted).

Maryland law has upheld a judgment based on any of the [*Dashiell*] exceptions."), no facts support that the DP-1 scenario falls outside of the Agreement.

As the undisputed record reflects, DP-1 applicants' initial insurance applications included discrepant information, prompting GEICO's underwriting team to require that the applicant submit additional information directly to GEICO. ECF No. 140-8 at 195:19–196:7; ECF No. 140-5 ¶ 7. Once the applicant resolved the discrepant information to GEICO's satisfaction, GEICO informed the applicant via email that he or she may complete the insurance application with the original GFR, a different GFR, or directly through GEICO. ECF No. 140-8 at 196:8–196:16. If the applicant completed the process with the originating GFR through to sale, then that GFR received commissions on the policy. If, on the other hand, the applicant completed the process with a GEICO employee, the GFR did not receive commissions. *Id.* at 216:15–217:8.

For Steve Ching, of the 508 applications originating with him and flagged for DP-1 review, the overwhelming majority – 498 – were never sold. ECF No. 140-5 ¶ 11. Of the ten remaining, Steve Ching sold three and received commissions for them, and GEICO sold the other seven. *Id.* This scenario is clearly covered by the 2020 Agreement. GEICO, the Agreement states, retains the right to "solicit business through its own channels" and that the GFR "shall not be entitled to compensation in respect of business or policies procured through such channels, directly or indirectly." ECF No. 140-6 at 5. Conversely, the GFR receives commission only for the "policies . . . *sold by GFR*." ECF No. 140-6 at 10, 13, 17, 21; ECF No. 140-7 at 4, 8, 14 (emphasis added). Thus, the Agreement, read most favorably to Steve Ching, provides that Steve Ching is entitled to commissions only for those DP-1 policies that he ultimately sold. The claim is covered by the contract. Thus, unjust enrichment cannot proceed. *See Sims Agency, L.L.C*, 159 F.4th at 290 (declining to apply the same *Dashiell* exception in a GEICO GFR agreement with identical

termination language); *SRH Holdings, LLC*, 2026 WL 2254519, at *2 (same). GEICO is entitled to summary judgment in their favor on Counts II and IV.

## V. Conclusion

For the foregoing reasons, this Court denies Steve Ching's motion for class certification and grants GEICO's motion for summary judgment on all claims in its favor. The remaining motions to exclude expert testimony as to classwide damages are dismissed as moot.

A separate Order follows.

11/24/2026
Date

/s/
Paula Xinis
United States District Judge